BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0721
     Facsimile: (213) 894-0141
     E-mail:   John.Lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>GUY MIZRACHI,<br><br>A Fugitive from the Government of the Federal Republic of Germany. | No. 2:25-MJ-06751<br><br>GOVERNMENT'S REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS; [Proposed] ORDER |

1        Plaintiff, United States of America, by and through its counsel

2    of record, the United States Attorney, hereby submits its request for

3    detention pending further extradition proceedings, and a memorandum

4    of points and authorities in support of that request.

5

6    Dated: November 4, 2025          Respectfully submitted,

7                                     BILAL A. ESSAYLI
                                      First Assistant United States Attorney
8
                                      IAN V. YANNIELLO
9                                     Assistant United States Attorney
                                      Chief, National Security Division
10

11
                                      */s/ John J. Lulejian*
12                                    JOHN J. LULEJIAN
                                      Assistant United States Attorney
13
                                      Attorneys for Plaintiff
14                                    UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   PROCEDURAL BACKGROUND.......................................3

III.  ARGUMENT....................................................3

      A.    Applicable Law........................................4

            1.    A Strong Presumption Against Bail Governs in an
                  International Extradition Proceeding..............4

            2.    Fugitives Must Be Detained Unless They Establish
                  "Special Circumstances" and also Demonstrate that
                  They Are Neither a Flight Risk nor a Danger to
                  the Community.....................................6

      B.    Analysis..............................................9

            1.    MIZRACHI Cannot Meet His Burden and Prove that He
                  Is Not a Significant Flight Risk..................9

            2.    MIZRACHI Cannot Meet His Burden and Establish
                  "Special Circumstances" that Justify Bail.........11

IV.   CONCLUSION.................................................12

CERTIFICATE OF COMPLIANCE.........................................13

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

CASES

In re Extradition of Adame,
    No. Misc. No. H-13-287, 2013 WL 1222115
    (S.D. Tex. Mar. 25, 2013)..................................... 10

In re Extradition of Antonowicz,
    244 F. Supp. 3d 1066 (C.D. Cal. 2017).................... 6, 8, 9

In re Extradition of Beresford-Redman,
    753 F. Supp. 2d 1078 (C.D. Cal. 2010)................... 6, 7, 8

In re Extradition of Garcia,
    615 F. Supp. 2d 162 (S.D.N.Y. 2009).......................... 5

In re Extradition of Garcia,
    761 F. Supp. 2d 468 (S.D. Tex. 2010)........................ 10

In re Extradition of Hamilton-Byrne,
    831 F. Supp. 287 (S.D.N.Y. 1992)............................. 8

In re Extradition of Heilbronn,
    773 F. Supp. 1576 (W.D. Mich. 1991)......................... 8

In re Extradition of Kin-Hong,
    913 F. Supp. 50 (D. Mass. 1996).............................. 6

In re Extradition of Knotek,
    No. 13-CV-9204-BRO-JCG, 2016 WL 4726537
    (C.D. Cal. Sept. 8, 2016).................................... 8

In re Extradition of Kyung Joon Kim,
    No. 04-CV-3886, 2004 WL 5782517
    (C.D. Cal. July 1, 2004).................................. 8, 9

In re Extradition of Mainero,
    950 F. Supp. 290 (S.D. Cal. 1996)......................... 6, 7

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

In re Extradition of Martinelli Berrocal,
     263 F. Supp. 3d 1280 (S.D. Fla. 2017)............... 5, 6, 8, 10

In re Extradition of Morrell,
     No. 3:24-MJ-05020-TLF, 2024 WL 756017
     (W.D. Wash. Feb. 23, 2024)................................... 10

In re Extradition of Nacif-Borge,
     829 F. Supp. 1210 (D. Nev. 1993)............................. 9

In re Extradition of Noeller,
     No. 17 CR 664, 2017 WL 6462358
     (N.D. Ill. Dec. 19, 2017).................................. 7, 8

In re Extradition of Orozco,
     268 F. Supp. 2d 1115 (D. Ariz. 2003)......................... 8

In re Extradition of Patel,
     08-430-MJ-HUBEL, 2008 WL 941628
     (D. Or. Apr. 4, 2008)...................................... 6, 7

In re Extradition of Pelletier,
     No. 09-mc-22416, 2009 WL 3837660
     (S.D. Fla. Nov. 16, 2009).................................... 8

In re Extradition of Perez-Cueva,
     No. 16-MJ-0233, 2016 WL 884877
     (C.D. Cal. Mar. 7, 2016)............................... 3, 4, 7

In re Extradition of Rovelli,
     977 F. Supp. 566 (D. Conn. 1997)............................. 8

In re Extradition of Shaw,
     No. 14-MC-81475-WM, 2015 WL 521183
     (S.D. Fla. Feb. 6, 2015).................................... 11

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

In re Extradition of Sidali,
     868 F. Supp. 656 (D.N.J. 1994)................................. 8

In re Extradition of Siegmund,
     887 F. Supp. 1383 (D. Nev. 1995).......................... 7, 9

In re Extradition of Smyth,
     976 F.2d 1535 (9th Cir. 1992)................................. 7

In re Mitchell,
     171 F. 289 (S.D.N.Y. 1909)................................... 4

Jhirad v. Ferrandina,
     536 F.2d 478 (2d Cir. 1976)................................. 10

Jimenez v. Aristiguieta,
     314 F.2d 649 (5th Cir. 1963)................................. 5

Kamrin v. United States,
     725 F.2d 1225 (9th Cir. 1984)................................ 3

Salerno v. United States,
     878 F.2d 317 (9th Cir. 1989)...................... 4, 6, 7, 9

United States ex rel. McNamara v. Henkel,
     46 F.2d 84 (S.D.N.Y. 1912)................................... 5

United States v. Botero,
     604 F. Supp. 1028 (S.D. Fla. 1985)......................... 10

United States v. Kin-Hong,
     83 F.3d 523 (1st Cir. 1996)................................. 7

United States v. Latulippe,
     No. 08-mj-59, 2008 WL 2704230
     (D.N.H. July 3, 2008)....................................... 8

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Leitner,

    784 F.2d 159 (2d Cir. 1986)............................ 4, 7, 8

United States v. Snyder,

    No. 13-7082-mj, 2013 WL 1364275

    (D. Ariz. Apr. 3, 2013)..................................... 4

Wright v. Henkel,

    190 U.S. 40 (1903)......................................... 5


STATUTES

18 U.S.C. §§ 3141 et seq................................... 3

18 U.S.C. §§ 3141(a)....................................... 3

18 U.S.C. §§ 3142.......................................... 3

18 U.S.C. §§ 3156.......................................... 3

18 U.S.C. §§ 3156(a)....................................... 3

18 U.S.C. §§ 3181 et seq................................... 3


FOREIGN STATUES

German Criminal Code, Section 129 para. 1.................. 1

German Criminal Code, Section 129 para. 5.................. 1

German Criminal Code, Section 129 para. 1.................. 1

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                                      <u>PAGE</u>

<u>TREATIES</u>

Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, U.S.-F.R.G., June 20,1978, T.I.A.S. No. 9785, <u>as amended by</u> the Supplementary Extradition Treaty with the Federal Republic of Germany, U.S.-F.R.G., Oct. 21, 1986, S. Treaty Doc. No. 100-6 (1987), <u>as amended by</u> the Second Supplementary Treaty to the Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, U.S.-F.R.G., Apr. 18, 2006, S. Treaty Doc. No. 109-14 (2006)....... 2

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is an extradition matter.  The Government of the Federal Republic of Germany ("Germany") has submitted to the United States a request for the provisional arrest with a view toward extradition of the fugitive, GUY MIZRACHI ("MIZRACHI"), so that he may be prosecuted in Germany for Formation of a Criminal Organization Abroad, in violation of Section 129 paras. 1, 5 and 129b para. 1 of the German Criminal Code.[1] (See Docket No. 1 at ¶ 2.)

Germany is prosecuting a global criminal organization, which through separate but related networks, falsified subscriptions to online "services" that were not provided, fraudulently charged debit and credit cards for those nonexistent services through German payment service providers, and distributed the wrongly charged money to the participants in the global criminal organization.  (See id. at ¶ 6(a).)  The networks, including the WebOps network in which MIZRACHI is accused of participating, created shell companies that purportedly operated fictitious pornographic Internet websites and fraudulently registered those companies with German payment service providers to facilitate financial transactions between unsuspecting victims and the criminal organization.  (See id.)  Germany's case is based in part on evidence developed during the successful 2020 prosecutions of the late Hamid "Ray" Akhavan ("R. Akhavan") and Ruben Weigand ("Weigand"), a current co-defendant, for similar criminal

---

[1] When the United States sought a warrant for MIZRACHI's provisional arrest, it did so based only on this charge, and without prejudice to proceeding on additional charges when Germany's formal request for extradition is reviewed by the Department of State and is presented to the Court.

conduct in the United States District Court for the Southern District of New York, 1:20-cr-00188-JBR (S.D.N.Y. 2020).[2]  (See id. at ¶ 6.)

According to German authorities, between or about 2016 and 2020, MIZRACHI was the right-hand lieutenant of R. Akhavan.  (See id. at ¶ 7(a).)  As early as 2011, MIZRACHI was named by employees of German payment processor Wirecard as the second-in-command (after R. Akhavan) and whose instructions had to be followed.  (See id.) Following R. Akhavan's arrest in 2020, MIZRACHI ran the WebOps network with R. Akhavan's brother, co-defendant A. AKHAVAN.  (See id.)  After R. Akhavan died in October 2024, MIZRACHI took over management of the WebOps network.  (See id.)  As one of the leaders of the WebOps network, MIZRACHI announced new online retailers (fictitious merchants) to register, monitored the current processing status of business registrations, and dealt with problems arising in connection with the rules of Visa or Mastercard.  (See id. at ¶ 7(b).)  MIZRACHI also approved contracts with third parties on behalf of online retailers (fictitious merchants).  (See id.)  In addition, MIZRACHI communicated with the German payment service processors.  See id. at ¶ 7(c).)  He determined which German payment processors the network should use, which documents the network should use to meet know-your-customer requirements of German payment processors that would demonstrate that the merchants charging the German payment processors were legitimate, and which fictitious

---

[2] See https://www.justice.gov/usao-sdny/pr/two-architects-fraudulent-scheme-sentenced-processing-over-150-million-through-us (R. Akhavan and Weigand sentenced following conviction of "scheme to deceive U.S. issuing banks and credit unions into effectuating more than $150 million of credit and debit card purchases of marijuana by disguising those transactions as purchases of other kinds of goods, such as face creams and dog products.")

1  website accounts the network should show to the German payment
2  processors to establish legitimacy.  See id. at ¶ 7(c).)

3  **II.  PROCEDURAL BACKGROUND**

4       On October 29, 2025, in accordance with its treaty obligations,[3]
5  the United States filed a Complaint for Provisional Arrest with a
6  View Toward Extradition (18 U.S.C. § 3184) in this Court.  (Docket
7  No. 1.)  That same day, the Honorable Steve Kim, United States
8  Magistrate Judge for the Central District of California, issued a
9  warrant for MIZRACHI's arrest.  On November 4, 2025, the
10 United States Marshals Service arrested MIZRACHI in Agoura Hills,
11 California.

12 **III. ARGUMENT**

13      Like the extradition process as a whole, the determination of
14 whether to release a fugitive on bail is sui generis.  The federal
15 statutes governing extradition in the United States, 18 U.S.C.
16 §§ 3181 et seq., do not provide for bail.  Further, the Bail Reform
17 Act, 18 U.S.C. §§ 3141 et seq., does not apply because an extradition
18 proceeding is not a criminal case.[4]  See Kamrin v. United States, 725
19 F.2d 1225, 1228 (9th Cir. 1984); In re Extradition of Perez-Cueva,

20

21      [3] Treaty Between the United States of America and the Federal
22 Republic of Germany Concerning Extradition, U.S.-F.R.G., June
   20,1978, T.I.A.S. No. 9785, as amended by the Supplementary
23 Extradition Treaty with the Federal Republic of Germany, U.S.-F.R.G.,
   Oct. 21, 1986, S. Treaty Doc. No. 100-6 (1987), as amended by the
24 Second Supplementary Treaty to the Treaty Between the United States
   of America and the Federal Republic of Germany Concerning
25 Extradition, U.S.-F.R.G., Apr. 18, 2006, S. Treaty Doc. No. 109-14
   (2006) (collectively "the Treaty").

26      [4]    The Bail Reform Act applies only to "offenses" in violation
   of United States law that are triable in the courts of the
27 United States.  See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2).  Here,
   MIZRACHI is not charged with an "offense" within the meaning of
28 18 U.S.C. § 3156, but rather, with an offense committed in violation
   of the law of the requesting state, Germany.

No. 16-MJ-0233, 2016 WL 884877, at *1 (C.D. Cal. Mar. 7, 2016).
Rather, case law provides that bail should be granted in an
extradition proceeding "only in the most pressing circumstances, and
when the requirements of justice are absolutely peremptory."  United
States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting In re
Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

    **A.    Applicable Law**

        1.    A Strong Presumption Against Bail Governs in an
             International Extradition Proceeding

    Unlike in domestic criminal cases, "[t]here is a presumption
against bail in an extradition case."  Salerno v. United States, 878
F.2d 317, 317 (9th Cir. 1989); see also United States v. Snyder, No.
13-7082-mj, 2013 WL 1364275, at *2 (D. Ariz. Apr. 3, 2013) (noting
that presumption against bail in extradition is "well-established").
The Supreme Court established this presumption against bail in Wright
v. Henkel, explaining that when a foreign government makes a proper
request pursuant to a valid extradition treaty, the United States is
obligated to deliver the person sought after he or she is
apprehended:

    The demanding government, when it has done all that the
    treaty and the law require it to do, is entitled to the
    delivery of the accused on the issue of the proper warrant,
    and the other government is under obligation to make the
    surrender; an obligation which it might be impossible to
    fulfill if release on bail were permitted.  The enforcement
    of the bond, if forfeited, would hardly meet the
    international demand; and the regaining of the custody of

the accused obviously would be surrounded with serious

embarrassment.

190 U.S. 40, 62 (1903); accord Jimenez v. Aristiguieta, 314 F.2d

649, 653 (5th Cir. 1963) ("No amount of money could answer the

damage that would be sustained by the United States were the

appellant to be released on bond, flee the jurisdiction, and be

unavailable for surrender, if so determined.  The obligation of

this country under its [extradition] treaty with Venezuela is of

paramount importance."); United States ex rel. McNamara v.

Henkel, 46 F.2d 84, 84-85 (S.D.N.Y. 1912) (presentation of

forfeited bail to foreign nation "is ridiculous, if not

insulting").

The prudential reasons for this presumption against bail in

international extradition cases are clear and compelling.  When, as

here, a requesting country meets the conditions of the applicable

extradition treaty, the United States has an "overriding interest in

complying with its treaty obligations" to deliver the fugitive.  In

re Extradition of Garcia, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009);

see also Wright, 190 U.S. at 62.  It is imperative that the United

States be regarded in the international community as a country that

honors its agreements in order to be in a position to demand that

other nations meet their reciprocal obligations to the United States.

Such reciprocity would be defeated if a fugitive flees after being

released on bond.  See In re Extradition of Martinelli Berrocal, 263

F. Supp. 3d 1280, 1306 (S.D. Fla. 2017) ("[O]ur Executive Branch has

a vested interest in enforcing our own treaty obligations for fear

that other treaty partners will refrain from doing so in the future.

And a difficult but necessary measure in carrying out that

5

1  responsibility is to secure a wanted individual and surrender him or
2  her to the foreign jurisdiction.").

3            2.   <u>Fugitives Must Be Detained Unless They Establish
4                 "Special Circumstances" and also Demonstrate that They
5                 Are Neither a Flight Risk nor a Danger to the
6                 Community</u>

7       In light of the strong presumption against bail established in
8  Wright and its progeny, international fugitives may not be released
9  on bail unless they demonstrate that (1) they are neither a flight
10  risk nor a danger to the community, and (2) "special circumstances"
11  warrant their release.  See, e.g., In re Extradition of Antonowicz,
12  244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017); In re Extradition of
13  Mainero, 950 F. Supp. 290, 294 (S.D. Cal. 1996).  "This 'special
14  circumstances' standard is much stricter than the 'reasonable
15  assurance' of appearance standard made applicable to domestic
16  criminal proceedings by the Bail Reform Act."  In re Extradition of
17  Kin-Hong, 913 F. Supp. 50, 53 (D. Mass. 1996).  Further, the burden
18  of showing "special circumstances" rests upon the fugitive.  See,
19  e.g., Salerno, 878 F.2d at 317-18.

20       In evaluating a fugitive's risk of flight in the extradition
21  context, courts have considered, among other things, the fugitive's
22  financial means, ties with foreign countries, and incentive to flee
23  based on the severity of the offense.  See, e.g., Martinelli
24  Berrocal, 263 F. Supp. 3d at 1304; In re Extradition of Beresford-
25  Redman, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that
26  "well-educated and sophisticated" fugitive facing serious charges in
27  foreign country had both "incentive and ability to flee" and
28  therefore presented flight risk); In re Extradition of Patel, 08-430-

                                      6

1   MJ-HUBEL, 2008 WL 941628, at *2 (D. Or. Apr. 4, 2008) (considering

2   fact that fugitive, a physician, had "more than sufficient assets

3   available with which to flee").

4       Crucially, the "special circumstances" inquiry is separate from

5   considerations of danger to the community or risk of flight.  See,

6   e.g., Perez-Cueva, 2016 WL 884877, at *2 (special circumstances must

7   exist in addition to absence of risk of flight).  "Even a low risk of

8   flight" is not a circumstance sufficiently "unique" to constitute a

9   special circumstance.  Leitner, 784 F.2d at 161; see also Salerno,

10   878 F.2d at 317-18 (lack of flight risk "is not a criteria for

11   release in an extradition case").  Conversely, a fugitive who poses a

12   danger to the community and/or a risk of flight should be denied

13   bail, even in the face of special circumstances.  See In re

14   Extradition of Siegmund, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

15       "Special circumstances must be extraordinary and not factors

16   applicable to all defendants facing extradition."  Mainero, 950 F.

17   Supp. at 294 (citing In re Extradition of Smyth, 976 F.2d 1535, 1535-

18   36 (9th Cir. 1992)).  Courts have considered and rejected a lengthy

19   list of would-be special circumstances, including but not limited to:

20      •     The complexity of the pending litigation, see, e.g., United

21          States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996);

22      •     The fugitive's need to consult with an attorney and/or

23          participate in pending litigation, see, e.g., Smyth, 976

24          F.2d at 1535-36;

25      •     The fugitive's character, background, and/or ties to the

26          community, see, e.g., In re Extradition of Noeller, No. 17

27          CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017);

28

Beresford-Redman, 753 F. Supp. 2d at 1089; In re
Extradition of Sidali, 868 F. Supp. 656, 658 (D.N.J. 1994);

- That the fugitive may have been living openly, see, e.g.,
  Leitner, 784 F.2d at 160-61; In re Extradition of
  Pelletier, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4
  (S.D. Fla. Nov. 16, 2009);

- Discomfort, special dietary needs, or medical concerns that
  can be attended to while incarcerated, see, e.g., Noeller,
  2017 WL 6462358, at *8-9; Martinelli Berrocal, 263 F. Supp.
  3d at 1301-02; United States v. Latulippe, No. 08-mj-59,
  2008 WL 2704230, at *1 (D.N.H. July 3, 2008); In re
  Extradition of Kyung Joon Kim, No. 04-CV-3886, 2004 WL
  5782517, at *5 (C.D. Cal. July 1, 2004); In re Extradition
  of Hamilton-Byrne, 831 F. Supp. 287, 290-91 (S.D.N.Y.
  1992);

- United States citizenship or the pendency of naturalization
  or other immigration proceedings, see, e.g., Antonowicz,
  244 F. Supp. 3d at 1072; In re Extradition of Knotek, No.
  13-CV-9204-BRO-JCG, 2016 WL 4726537, at *7 (C.D. Cal.
  Sept. 8, 2016); In re Extradition of Orozco, 268 F. Supp.
  2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, see, e.g., Pelletier,
  2009 WL 3837660, at *3-4 (allegedly well-respected
  businessman); In re Extradition of Heilbronn, 773 F. Supp.
  1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

- The availability of electronic monitoring, see, e.g., In re
  Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn.
  1997);

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, see, e.g., Salerno, 878 F.2d at 318; Antonowicz, 244 F. Supp. 3d at 1070; and

- The availability of bail for the same offense in the requesting country, see, e.g., Antonowicz, 244 F. Supp. 3d at 1070; Kyung Joon Kim, 2004 WL 5782517, at *2; Siegmund, 887 F. Supp. at 1386-87; but see In re Extradition of Nacif-Borge, 829 F. Supp. 1210, 1216-17 (D. Nev. 1993).

While in certain exceptional cases some of the above may have been deemed a "special circumstance," courts generally determine "special circumstances" to exist based on a confluence of factors, as opposed to any single consideration.  Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**B.  Analysis**

The United States respectfully requests that the Court detain MIZRACHI without bond.  MIZRACHI cannot meet his burden and prove that he is not a significant flight risk.  Further, even if MIZRACHI somehow could overcome this hurdle, the United States is not aware of any "special circumstances" that would justify bail in this case.

    1.  <u>MIZRACHI Cannot Meet His Burden and Prove that He Is Not a Significant Flight Risk</u>

There is a substantial risk that MIZRACHI would flee if he were released from custody.  A fugitive charged with crimes in another country is, by definition, in flight or deliberately absent from that jurisdiction.  The fact that the fugitive has evaded and/or continues to evade legal process in the requesting country is indicative of

MIZRACHI's risk of flight in the United States.  Cf. United States v. Botero, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same-the avoidance of prosecution.") (citing Jhirad v. Ferrandina, 536 F.2d 478, 483 (2d Cir. 1976)).

Given the strength of Germany's case and the United States' relatively low burden of proof in extradition hearings, MIZRACHI has strong incentive to flee, whether to a third country or to an underground location within the United States.  See, e.g., In re Extradition of Garcia, 761 F. Supp. 2d 468, 483 (S.D. Tex. 2010) ("The Court believes that [fugitive]'s risk of flight is beyond a 'tolerable risk.'  He has virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof, there are significant risks that he will be formally extradited to Mexico."); In re Extradition of Adame, No. Misc. No. H-13-287, 2013 WL 1222115, at *3 (S.D. Tex. Mar. 25, 2013) (the fugitive "has virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof, there is a significant risk that he will be formally extradited to Mexico").

Moreover, the prospect of serving a lengthy prison sentence in Germany incentivizes MIZRACHI's flight.  See, e.g., In re Extradition of Morrell, No. 3:24-MJ-05020-TLF, 2024 WL 756017, at *3 (W.D. Wash. Feb. 23, 2024) (prospect of significant jail time upon extradition supports a significant incentive to flee); Martinelli Berrocal, 263 F. Supp. 3d at 1305 (sixty-six years of age and potential twenty-one-

1   year sentence "materially contribute[d] to [the fugitive's] high risk

2   of flight"); In re Extradition of Shaw, No. 14-MC-81475-WM, 2015 WL

3   521183, at *9 (S.D. Fla. Feb. 6, 2015) (noting that "the [fugitive]

4   is facing serious criminal sanctions in Thailand, which fact provides

5   him with a strong incentive to flee").  Here, MIZRACHI faces a

6   maximum term of imprisonment of 10 years if convicted of the offense

7   for which is he sought by Germany.  Moreover, given the scope of the

8   economic harm caused by the WebOps network that MIZRACHI helped lead-

9   estimated to be approximately € 195 million-he likely has the

10  financial resources to flee.  Thus, MIZRACHI has every incentive and

11  the ability to flee this district and/or the United States if he is

12  not detained, and no amount of bail would guarantee his presence

13  during his extradition proceeding.

14          2.   MIZRACHI Cannot Meet His Burden and Establish

15               "Special Circumstances" that Justify Bail

16       MIZRACHI's severe risk of flight is sufficient alone for the

17  Court to deny any forthcoming application for bail.  However, even if

18  the Court were satisfied that he is neither a flight risk nor a

19  danger to the community, the United States is unaware of any "special

20  circumstances" that would justify bail in this case.

21       Notwithstanding the foregoing, should the Court be inclined to

22  grant bail in this case, the United States respectfully requests that

23  the Court submit special written findings as to those specific

24  matters that are found to constitute "special circumstances."

25  Moreover, to protect the ability of the United States to meet its

26  treaty obligations to the Government of Germany, the United States

27  also respectfully requests that the Court notify the parties within a

28

reasonable amount of time in advance of any contemplated release order.

**IV.  CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court detain MIZRACHI pending resolution of this extradition proceeding.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Plaintiff United States of America, certifies that this brief contains <u>3,028</u> words, which complies with the word limit of L.R. 11-6.1.


Dated: November 4, 2025          Respectfully submitted,

                                 BILAL A. ESSAYLI
                                 First Assistant United States Attorney

                                 IAN V. YANNIELLO
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                 */s/ John J. Lulejian*
                                 JOHN J. LULEJIAN
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA