DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net

CHAD D. NARDIELLO, ESQ.
California Bar No. 224837
NARDIELLO TURANCHIK TOMPKINS LLP
1801 Century Park East, Suite 1050
Century City, CA 90067
Telephone: (310) 201-0123
chad@nt-llp.com

Attorneys for GUY MIZRACHI

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
* * * * * *

| | | |
|---|---|---|
| IN THE MATTER OF THE EXTRADITION OF | ) ) ) | CASE NO. 2:25-mj-06751 |
| | ) | DATE OF HEARING: |
| GUY MIZRACHI, | ) ) | |
| A fugitive from the Government of The Federal Republic of Germany. | ) ) ) | TIME OF HEARING: |
| _____ | ) | |

i

## GUY MIZRACHI'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION TO REVOKE ORDER GRANTING REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS AND/OR OBJECTION TO ORDER GRANTING REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS AND DENYING REQUEST FOR RELEASE PENDING EXTRADITION

COMES NOW, GUY MIZRACHI, by and through his attorneys, DAVID Z. CHESNOFF, ESQ. and RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and CHAD D. NARDIELLO, ESQ., of the law firm NARDIELLO TURANCHIK TOMPKINS LLP, and files this supplemental memorandum of points and authorities in support of his "Motion to Revoke Order Granting Request for Detention Pending Extradition Proceedings and/or Objection to Order Granting Request for Detention Pending Extradition and Denying Request for Release Pending Extradition," for review of United States Magistrate Judge Maria T. Audero's Order dated Dec. 9, 2025 (ECF No. 32, "Mag. Order") (attached as Exhibit B); *see also* Transcript dated Dec. 9, 2025 (ECF No. 33, "Tr.") (attached as Exhibit A).[1]

This supplemental memorandum is being filed pursuant to the Court's order dated December 29, 2025. Order (ECF No. 36) (stating that a hearing shall be subsequently scheduled).

---

[1] This supplemental memorandum incorporates Mr. Mizrachi's prior invocation (ECF No. 35, Dec. 22, 2025) of the Writ of Habeas Corpus as an alternative form of relief. *Id.* at 2-3 (citing *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012)).

The supplemental Memorandum of Points and Authorities is attached hereto.

Dated this 8th day of January, 2026.

Respectfully Submitted:          Respectfully Submitted:

/s/ David Z. Chesnoff          /s/ Chad D. Nardiello

DAVID Z. CHESNOFF, ESQ.    CHAD D. NARDIELLO, ESQ.

*Pro Hac Vice*          California Bar No. 224837

RICHARD A. SCHONFELD, ESQ.  NARDIELLO TURANCHIK TOMPKINS LLP

California Bar No. 202182    1801 Century Park East, Suite 1050

520 South Fourth Street     Century City, CA 90067

Las Vegas, Nevada 89101     Telephone: (310) 201-0123

Telephone: (702) 384-5563    Attorney for GUY MIZRACHI

Attorneys for GUY MIZRACHI

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES........................ 1

I.    INTRODUCTION......................................................................... 1

II.   PROCEDURAL HISTORY AND MAGISTRATE JUDGE'S ORDER DENYING RELEASE PENDING EXTRADITION.... 1

III.  MR. MIZRACHI'S BACKGROUND INFORMATION............ 5

IV.   ARGUMENT ................................................................................ 9

   A. Legal Principles ........................................................................... 9

       1. Extradition in General ...................................................... 9

       2. Legal Framework for Review of Detention Orders in Extradition Proceedings .................................................. 10

   B. The Courts Must Interpret the Already Formidable List of "Special Circumstances" in an Evolving, Broadly-Defined Manner ......... 10

   C. As Emphasized by German Attorney Krauss's Declaration and the Release Orders Issued for Mr. Mizrachi's Substantively Identical Co-Defendants, "Special Circumstances" Exist Here........................ 13

       1. The availability of bail for Mr. Mizrachi in Germany (should he be eventually extradited there) is a "special circumstance" favoring release-as stated in Magistrate Judge Kim's order releasing the similarly situated Katiuska Cruz................ 13

       2. Germany's refusal to extradite its own citizens to the United States creates a lack of reciprocity under the treaty, thus creating another "special circumstance" ......................... 15

       3. Mr. Mizrachi's detention is – in light of his three similarly situated codefendants' releases – unfair and disparate, thus justifying classification as a "special circumstance" ...... 18

4.  Germany's delays in requesting extradition and in producing the voluminous contents of the investigation file to Mr. Mizrachi are "special circumstances" warranting release ....................................................................................... 21

D. This Court Should Further Find that – Despite the Magistrate Judge's Wrongful Refusal to Address the Issue – Release Conditions Can be Fashioned to Negate Mr. Mizrachi's Alleged Flight Risk ........... 23

V.    CONCLUSION .............................................................................. 25

CERTIFICATE OF SERVICE .......................................................... 26

CERTIFICATE OF COMPLIANCE ................................................. 27

1

# TABLE OF AUTHORITIES

2

3

## CASES

4

*Ahmad v. Wigen,*
910 F.2d 1063 (2d Cir. 1990)............................................................................. 9

5

6

*Aronson v. May,*
85 S. Ct. 3, 5 (1964) ......................................................................................... 11

7

8

*Beaulieu v. Hartigan,*
554 F.2d 1, 915, 917 (1st Cir. 1977)............................................................ 12, 23

9

10

*Factor v. Laubenheimer,*
290 U.S. 276, 293-94 (1933) ............................................................................ 16

11

12

*Galante v. Warden,*
573 F.2d 707, 708 (2d Cir. 1977).................................................................... 11

13

14

*In re the Extradition of Chapman,*
459 F. Supp. 2d 1024, 1027 (D. Haw. 2006).............................................. 11, 22-23

15

16

*In re the Extradition of Gonzalez,*
52 F. Supp. 2d 725, 736 (W.D. La. 1999) ......................................................... 12

17

18

*In re the Extradition of Kyung Joon Kim,*
2004 WL 5782517 (C.D. Cal. July 1, 2004)................................................. 10, 23-24

19

20

*In re the Extradition of Mainero,*
950 F. Supp. 290, 294 (S.D. Cal. 1996).......................................................... 12, 20

21

22

*In re the Extradition of Santos,*
473 F. Supp. 2d 1030, 1036 (C.D. Cal. 2006) ................................................. 10-12

23

24

*In re Kirby,*
106 F. 3d at 855, 863 (9th Cir. 1996) ............................................................. 12

25

26

27

28

*In the Matter of Extradition of Lehming,*
951 F. Supp. 505 (D. Del. 1996)........................................................................ 17

*Matter of Extradition of Antonowicz,*
244 F. Supp. 3d 1066-1068 (C.D. Cal. 2017)................................................ 10, 23

*Matter of Extradition of Howard,*
996 F.2d 1320, 1329, 1330-1331 (1st Cir. 1993) ............................................ 9,16

*Matter of Extradition of Smyth,*
976 F.2d 1535 (9th Cir. 1992) ............................................................................ 10

*Martinez v. United States,*
793 F.3d 533, 563 (6th Cir. 2015) ...................................................................... 16

*Martinez v. United States,*
828 F.3d 451 (6th Cir. 2016) .............................................................................. 16

*Parretti v. United States,*
143 F. 3d 508, 512 (9th Cir. 1998)................................................................... 12-13

*Prasoprat v. Benov,*
421 F.3d 1009, 1016 (9th Cir. 2005) .................................................................... 9

*Salerno v. United States,*
878 F.2d 317, 318 (9th Cir. 1989) ................................................................10-11, 23

*Santos v. Thomas,*
830 F.3d 987, 990 (9th Cir 2016) ....................................................................... 11

*Trinidad y Garcia v. Thomas,*
683 F.3d 952, 956, 1000 (9th Cir. 2012). ........................................................... 15

*United States v. Ardeshir Akhavan,*
2:25-mj-6749.................................................................................................... 18

*United States v. Bryant,*
827 F. App'x 22, 124-25 (2d Cir. 2020).......................................................... 19

*United States v. Boustani,*
932 F.3d 79, 82 (2d Cir 2019)........................................................................ 19

*United States v. Casteneda-Castillo*
739 F. Supp. 2d 49, 57-58 (D. Mass. 2010)............................................... 11, 22

*United States v. Dagesian,*
2023 WL 2061934, No. 2:21-cr-00057-MCS (C.D. Cal., Feb. 15, 2023)........ 3

*United States v. Fanyo-Patchou,*
426 F. Supp. 3d 779, 781 (W.D. Wash. 2019) ................................................. 3

*United States v. Katiuska Cruz,*
2:25-mj-6750 (SK)....................................................................................13-14, 18

*United States v. Kin-Hong,*
110 F.3d 103, 110 (1st Cir. 1997)..................................................................... 9

*United States v. Koenig,*
912 F.2d 1190, 1191 - 1193 (9th Cir. 1990)..................................................... 3

*United States v. Kollmar,*
2019 WL 2163005 (E.D.N.Y., Aug 31, 2022)............................................. 13, 22

*United States v. Lewis,*
611 F.3d 1172, 1176 (9th Cir. 2010) ........................................................... 22-23

*United States v. Martinez,*
905 F.2d 251, 253 (9th Cir. 1990) ................................................................... 21

*United States v. Mendoza-Morales,*
347 F.3d 772, 777 (9th Cir. 2003) ................................................................... 21

*United States v. Messina,*
566 F. Supp. 740, 743 (E.D.N.Y. 1983) ........................................................... 23

*United States v. Ramnath,*
533 F. Supp. 2d 662, 682 (E.D. Tex. 2008)........................................................ 10

*United States v. Taitz,*
130 F.R.D. 442, 447 (S.D. Cal. 1990) ............................................................... 14

*United States v. Tunde Benak,*
2:25-mj-6757.................................................................................................... 18

*United States v. Weigand & Akhavan,*
No. 1:20-cr-00188-jsr (E.D.N.Y.)..................................................................... 5-6

*United States v. Williams,*
611 F.2d 914, 915 (1st Cir. 1979)...................................................................... 11

*Wright v. Henkel,*
190 U.S. 40 (1903)....................................................................................... 10, 12

*Wroclawski v. United States,*
634 F. Supp. 2d 1003, 1008 (D. Ariz. 2009) ................................................. 11, 22

**STATUTES**

18 U.S.C. §§ 3141 ............................................................................................ 10

18 U.S.C. § 3184 ................................................................................................ 9

18 U.S.C. § 3185 ................................................................................................ 9

18 U.S.C. § 3186 ................................................................................................ 9

**<u>TREATIES</u>**

Treaty Between the United States of America and the Federal Republic of
Germany Concerning Extradition, U.S.-F.R.G., June 20, 1978, T.I.A.S. No. 9785,
as amended by the Supplementary Extradition Treaty with the Federal Republic of
Germany, U.S.-F.R.G., Oct. 21, 1986, S. Treaty Doc. No. 100-6 (1987), as
amended by the Second Supplementary Treaty to the Treaty Between the United
States of America and the Federal Republic of Germany Concerning Extradition,
U.S.-F.R.G., Apr. 18, 2006, S. Treaty Doc. No. 109-14 (2006)........................ 1-2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

This matter stems, first, from the Department of Justice's overzealous attempt to extradite Guy Mizrachi, a United States citizen, to the Federal Republic of Germany; and, second, from Magistrate Judge Audero's refusal to correct such obvious overreach. As a result, Mr. Mizrachi, who has lived openly in the United States for decades without a single blemish on his record, remains detained pending extradition.

As shown below, the recently widowed Mr. Mizrachi was "provisionally arrested with a view toward extradition" on November 4, 2025. ECF No. 1 (Complaint, Oct. 29, 2025). But unlike at least three other American citizens who were also arrested in the Central District of California, and who also face extradition to Germany to face the same German charges, Mr. Mizrachi is the *only* one ordered detained.

That order was wrong. Because the Magistrate Judge incorrectly held that Mr. Mizrachi's case did not present the requisite "special circumstances"—and because overzealous domestic law enforcement officers cannot simply pack American citizens off to foreign countries absent thorough, accurate analyses—this Court should, on *de novo* review, order Mr. Mizrachi released. *See infra* at note 4 (*de novo* standard).

## II.    PROCEDURAL HISTORY AND MAGISTRATE JUDGE'S ORDER DENYING RELEASE PENDING EXTRADITION

On October 29, 2025—pursuant to the *Treaty Between the United States and the*

1

*Federal Republic of Germany Concerning Extradition*, June 20, 29178, T.I.A.S. No. 9785, *as amended*, the United States filed a Complaint for Provisional Arrest with a View Towards Extradition. *See* ECF No. 1. That same day, the Honorable United States Magistrate Judge Steve Kim issued a warrant for Mr. Mizrachi's arrest; on November 4, 2025, Mr. Mizrachi was arrested at his home in California. GRD at 3.

On December 9, 2025, Magistrate Judge Audero conducted a hearing on the government's request for detention. At the outset, Judge Audero—who stated she had previously held *ex parte* discussions with the Magistrate Judge who had ordered two of Mr. Mizrachi's similarly situated co-defendants (Ardeshir Akhavan and Tunde Benak) to be released pending extradition, *see* Ex. A at 33, 38-39—stated her intent to detain Mr. Mizrachi. *See id.* at 6 (" I . . . don't find special circumstances, but you have an opportunity to argue it. If we don't get . . . through special circumstances, then flight risk is not an issue, and of course it appears that the Government has not made an argument regarding danger . . . . ."); *see also id*. at 19 ("I blocked out an hour and a half . . . . [K]nock yourself out, Counsel.").[2]

---

[2]     When Mr. Mizrachi's counsel advised that two similarly situated American citizens (Mr. Akhavan and his wife, Tunde Benak) had been released pending extradition, *see* Ex. A at 33-34, Judge Audero replied during the hearing that she had, through some never-recorded means, learned from another Magistrate Judge "information . . . from the judge who made that [release] decision." *Id*. at 39; *see also id*. at 38-39 ("I asked [the judge in Akhavan's case] . . . what happened with the other defendants, and he was released. And . . . that's what he told me;" admitting, however, that she did not know why Akhavan's healthy common-law wife (Tunde Benak) had *also* been released). Moreover, because undersigned counsel first learned about these never-recorded conversations *during* the hearing on December 9, there was no opportunity to brief this remarkable development prior to the hearing.

While this Court's review of the Magistrate Judge's ruling will take place under a *de novo* standard,[3] and while the Pretrial Services office did recommend that Mr. Mizrachi be released pending extradition, *see* Ex. A at 53, the record reflects that the Magistrate Judge recognized the glaring fact that only one of the parties to the bilateral extradition treaty (the United States) was following it, while the other (Germany) was not. *See* Ex. A at 42-47. But despite this recognition, the Magistrate Judge nonetheless ruled—wrongly—that neither this obvious non-reciprocity nor any other factor qualified as a "special circumstance." Ex. A at 52 (labeling non-reciprocity as "not determinative," for some never-explained reason).

The Magistrate Judge stated that "special circumstances" were absent in this case—by rattling off a slew of "reasons" accompanied by little or no legal explanation:

> The Court finds that the Defendant has not overcome the presumption of detention that arises in extradition cases through which the Defendant must establish that special circumstances exist and that he is neither a risk of non-appearance nor a danger to the community.

> The Court does not find special circumstances here. The fact that the Defendant is a U.S. citizen and has longstanding ties to the community may very well be true, but that goes more to the risk of non-appearance and  danger. Also, that is not a special circumstance.

> [T]he 21-year-old is pretty much caring for themselves, and . . . the Court suggests . . . additional therapy . . . during this period . . . . [T]he

---

[3]    *See*, *e.g.*, *United States v. Dagesian*, 2023 WL 2061934, No. 2:21-cr-00057-MCS (C.D. Cal., Feb. 15, 2023) ("District courts review a magistrate judge's order of release or detention *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The district court . . . must . . . , without deference, make an independent determination of whether the findings are correct. *Id.* at 1193. 'The district court may also consider new evidence presented by the parties.'") (quoting *United States v. Fanyo-Patchou*, 426 F. Supp. 3d 779, 781 (W.D. Wash. 2019) and citing *Koenig*, 912 F.2d at 1192-93)).

17-year-old is under the care of a family member . . . and there is no evidence that this cannot continue. . . . [T]here is no evidence that the Defendant cannot pay for caretakers or drivers as needed to assist this child . . . . With respect to the Defendant's . . . aging parents, . . . the brother is able to assist and there is no evidence that he can't continue to do so.

[T]he Court will . . . recommend[]to the institution . . . to address . . . the medication for his glaucoma [and will] . . . recommend[] . . . the original rectal examination . . . The fact that the Defendant suffers from pressing obligations . . . can be handled by lawyers . . . .

The fact that the Defendant has no prior criminal history is not considered to be a special circumstance. The fact that the Defendant was charged with a non-violent crime, . . . is not a special circumstance.

The fact that the charges are political and speculative . . . . That is not a special circumstance and is not something that this court can decide on behalf of the German government.

The . . . contention that there is an inevitable delay or that . . . . [S]o far there is no evidence of delay, and this is mere speculation . . . . [T]he argument that . . . Germany . . . waited 10 years to charge this Defendant, that is not for a U.S. court to question or evaluate the criminal prosecutorial decisions of another country or the efficiency of foreign courts and law enforcement. This . . . should be argued to the Secretary of State, who oversees the relationship between the two countries . . . .

The . . argument that the German case is based on facially insufficient [or inadmissible] evidence . . . is not for this court to decide[.]

The fact that co-conspirators have been released on bail pending the extradition determination is not a factor . . . . And the fact that Germany does not extradite its U.S. nationals to the U.S., that is a factor that the Court considers, but it is not a determinative factor and . . . not a persuasive factor that would . . . require a finding of special circumstances.

With that, the Court need not reach the question of flight risk of danger
to the community. For those reasons, the Court orders the Defendant
detained and remanded to the custody of the U.S. Marshal.

Ex. A at 47-53 (emphases added).

The Magistrate Judge thereafter entered a brief order. *See* ECF No. 32 (Dec. 9,

2025) (attached as Ex. B) at 1-2 (ruling that Mr. Mizrachi had not shown "special

circumstances," and that further inquiry into "flight risk" was not necessary).

## III.    MR. MIZRACHI'S BACKGROUND INFORMATION

By way of background (not as the centerpieces for his arguments showing

"special circumstances"), Mr. Mizrachi—who has offered to post a $1.5 million

secured bond and to submit to near-total house arrest), is a citizen of the United States,

Canada and Israel. He was awarded a Bachelor of Arts from Concordia University

(1993), followed by a Juris Doctor, as well as a Bachelor of Civil Law Degree from

McGill University (1999), achieving *magna cum laude*.

Mr. Mizrachi is 55 years old. He has lived a law-abiding life in California for 26

years. He has no criminal history in the United States or in any other country; has never

had any contact with law enforcement in the United States; and has never received any

letter from any domestic prosecutor or law enforcement agency advising that he is the

target of a criminal investigation. Rather, the instant criminal allegations stem

exclusively from the laws of the Federal Republic of Germany; and, unlike the New

York-based federal prosecutions lodged against Mr. Mizrachi's alleged co-defendants

nearly five years ago in *United States v. Wiegand & Akhavan*, No. 1:20-cr-00188-JSR

(E.D.N.Y.), there are no pending charges against Mr. Mizrachi for violation of any United States laws—be they state or federal.

In this regard, it is worth noting that—in the federal prosecutions from 2020 mentioned above (naming Hamid "Ray" Akhavan and Ruben Weigand as defendants)—Mr. Mizrachi knew full well, at that time, that his alleged co-defendants were being tried for a fraud that related to his employer. Critically, despite this, Mr. Mizrachi made no attempt to flee.

Thus, whatever charges await him in Germany, Mr. Mizrachi faces critical, immediate obligations to his American family right now. Mr. Mizrachi is the sole caregiver for his elderly parents, both of whom live in California and who suffer from deteriorating medical conditions—aphasia in the case of Mr. Mizrachi's father, Rami, and Stage 4 cancer and dementia in the case of his mother, Zeeva. With their son incarcerated, Rami and Zeeva can no longer receive his care or companionship—a cruel situation that a prominent neurologist wishes to remedy through release.[4]

---

[4]    The dire, worsening medical conditions of Mr. Mizrachi's parents are amply stated in a November letter (attached as Exhibit H), by neurologist Jeanne Teitelbaum, MD, FRCP:

> Zeeva Mizrachi has stage 4 cancer and is . . . undergoing chemotherapy. In addition to this, she has developed dementia and . . . needs help with all her activities of daily living . . . .

> Rami Mizrachi suffers from primary progressive aphasia . . . . [H]e is slowly and surely losing his ability to speak and understand words . . . . He . . . is not able to take care of his wife on his own.

> [Mr. Mizrachi] is a critical support for his parents, who he has been taking care of for many years. Both Zeeva and Rami . . . intensely depend on Guy for their

Nor—contrary the Magistrate Judge's suggestions—can Mr. Mizrachi's brother Ron, or a paid caregiver, fill the void created by Mr. Mizrachi's absence. Over the past years, Mr. Mizrachi's wife, Sandy, suffered from Stage 4 brain cancer before dying just a few months ago. During his wife's deterioration, Mr. Mizrachi provided round-the-clock support as her sole caregiver over a period of one and one-half years, but suffered (in both mind and body) as he watched his life partner slowly die before his eyes. Mr. Mizrachi is prepared to respond to any extradition issues or criminal issues that he may face; but to say he has emotionally recovered in any meaningful way from his wife's recent death (in August 2025) would be cruel.[5]

Mr. Mizrachi's children face equally dire circumstances. Twenty-one year-old Che, a student living on-campus at UCLA, suffers from autism; while high-functioning, Che's inability to remember simple appointments or obligations requires Mr. Mizrachi to drive Che to any appointments and oversee fulfillment of his duties. Moreover, with Che at college, younger child, Jacob, 17, lives alone in an empty house—his father is in jail, his mother is deceased, and his grandparents are infirm.

Examples from Che and Jacob's letters to the Magistrate Judge illustrate the

maintenance and wellbeing . . . . For the sake of his parents . . . as well as of his children . . . Guy Mizrachi should be . . . out on bail so that he may care for and support his very vulnerable children and parents.

*Id.* at 1-2.

[5] Mr. Mizrachi's brother, Ron, reported in November 2025 that after their mother had collapsed after a 24-hour course of chemotherapy, he had, in the absence of his incarcerated brother, rushed to her house early that morning. Despite Ron attending to his mother that night, he cannot be regarded as Mr. Mizrachi's "replacement" in any meaningful sense.

challenges Mr. Mizrachi's children face:

> Your Honor, this is difficult for me to talk about, but my anxiety has elevated since my mother's death (in late August) and my father's imprisonment (earlier in November). I suffer from more frequent, more severe panic attacks which makes it difficult to function . . . . [W]ithout [my father], . . . I am isolated and alone. . . . Jacob and I have zero insight into the running of our home. We don't know how to access our most basic needs, as our father would handle it all . . . .

Letter of Che Mizrachi (attached as Exhibit I) at 1-2.

> Che is an amazing brother . . . but . . . cannot take care of me. My grandparents are very good people . . . but they are very elderly and my grandmother has dementia. My dad is my best friend and, now, he means EVERYTHING . . . . We don't know anything about the life that was built around us by my father and mother, both of whom are gone.

> Your honor please . . . put whatever restriction you deem necessary, and please know that my father would never abandon me or my brother, or do anything you tell him not to do.

Letter of Jacob Mizrachi (attached as Exhibit J) at 2.

Mr. Mizrachi's children and parents will thus suffer to an extraordinary degree without his personal, reassuring presence—now. *See*, *e.g.*, Report of Jeffrey W. Whiting, Ph. D. (Jan. 5, 2025) (attached as Exhibit D) at 2 (opining that, even if he is eventually extradited, Mr. Mizrachi's release is "strongly recommended," based on Dr, Whiting's "perspective and experience as a psychologist with 40 years of experience assessing forensic issues"), 3 ("The point here is that after losing their mother, in just over two months' time, [the children] also lost their father"), 5 (Che, who two weeks ago began the hormonal phase in their gender transition, is no longer able to discuss this wrenching emotional issue with their father; shortly after mother's death, the arrest

of their father "left [the children] psychologically [] orphaned"), 5 ("Even a few months of father's presence would be protective for these children, making it less likely that either child would develop more serious, psychological disorders.").

## IV.    ARGUMENT

### A.    Legal Principles.

#### 1.    *Extradition in General*

The physical extradition of an American citizen is, ultimately, a matter for the Secretary of State's discretion. *See* 18 U.S.C. § 3186 ("The Secretary of State *may* order the person committed under sections 3184 or 3185 of this title to be delivered to any authorized agent of such foreign government . . . .") (emphasis added). In exercising this discretion, the Secretary may consider factors that reach beyond legal formulae (*e.g.*, terms of art like "special circumstances") and consider humanitarian concerns. *See, e.g., United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) (holding that humanitarian considerations, including prison conditions, are committed to the Secretary of State); *Ahmad v. Wigen*, 910 F.2d 1063, 1066–67 (2d Cir. 1990) (concerns about "the procedures or treatment which await a surrendered fugitive" fall within the Secretary's discretion); *Prasoprat v. Benov*, 421 F.3d 1009, 1016 (9th Cir. 2005) (humanitarian objections, including health or prison conditions, "are matters properly directed to the Secretary of State"); *Matter of Extradition of Howard*, 996 F.2d 1320, 1329 (1st Cir. 1993) (the Secretary may consider the prisoner's age, health, and the humanitarian implications of extradition).

2.  *Legal Framework for Review of Detention Orders in Extradition Proceedings*

In the extradition context, this Court's *de novo* review of a detention order takes place in the framework of a two-step process. First—given the "presumption against bail in an extradition case"—the Court first determines whether "'special circumstances' will justify bail.'" *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989) (citing *Wright v. Henkel*, 190 U.S. 40, 63 (1903)); *see also Matter of Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992). "Once special circumstances are shown, [the respondent, pursuant to the second step,] must also demonstrate that he or she will not flee or pose a danger to any other person or to the community." *In re the Extradition of Kyung Joon Kim*, 2004 WL 5782517 (C.D. Cal. July 1, 2004)." *Matter of Extradition of Antonowicz*, 244 F. Supp. 3d 1066, 1067-68 (C.D. Cal. 2017) (MacKinnon, J.).[6]

**B.    The Courts Must Interpret the Already-Formidable List of "Special Circumstances" in an Evolving, Broadly-Defined Manner.**

The extant case law already recognizes various "circumstances" deemed sufficiently "special" to warrant—either alone or cumulatively—release pending extradition. Thus, this Court in *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1036

---

[6]    While the Bail Reform Act, 18 U.S.C. §§ 3141 ("BRA"), does not, strictly speaking, apply to extradition cases, its underlying principles regarding detention do have cross-over applicability here. *See, e.g., United States v. Ramnath*, 533 F. Supp. 2d 662, 682 (E.D. Tex. 2008) (BRA's terms, such as "compelling reason" or "exceptional circumstance," are "semantically and analytically synonymous with the term 'special circumstance' employed in extradition jurisprudence;" thus, "[BRA] cases may illuminate the special circumstance inquiry.") (emphasis added).

(C.D. Cal. 2006), *rev'd on other grounds in Santos v. Thomas*, 830 F.3d 987, 990 (9th Cir. 2016) (en banc), mentioned only three such examples: "[Special] circumstances include [1] the raising of substantial claims upon which the appellant has a high probability of success, [2] a serious deterioration of health while incarcerated, and [3] unusual delay in the appeal process." *Salerno*, 878 F.2d at 317–318 (citing *Aronson v. May*, 85 S. Ct. 3, 5 (1964); *United States v. Williams*, 611 F.2d 914, 915 (1st Cir. 1979); *Galante v. Warden*, 573 F.2d 707, 708 (2d Cir. 1977)).

A host country's delay in bringing a prosecution against an American citizen— as well as the attendant delay in requesting extradition of that citizen to face foreign charges—has been expressly cited as a "special circumstance." *See, e.g., In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006) (special circumstance where "Mexico waited three years before bringing extradition proceedings against the Respondents, during which Respondents were living openly and notoriously"); *see also United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 57-58 (D. Mass. 2010) (lack of explanation for five-year delay between order commencing the investigation and the defendant's provisional arrest, where defendant was 'easily found,' weighed 'very heavily in favor of release'"); *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1008 (D. Ariz. 2009) (lack of explanation for 11-year delay in extradition, "despite the fact that Petitioner lived openly in the United States and made no effort to hide his whereabouts," was a special circumstance for release).

While this list of special circumstances, alone, touches on Mr. Mizrachi's case, it is not—and cannot be—complete. "Special circumstances" denotes an expansive, ever-evolving inquiry; stated conversely, therefore, a complete roster of those circumstances cannot be contained on any one list that purports to be "final."

> The term "special circumstances" . . . "has never been precisely defined and courts have addressed on a case by case basis particularly sufficient circumstances that would reverse the strong presumption against bail." *In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996); *see Kirby*, 106 F.3d at 863 (noting that the Supreme Court's decision in *Wright* "does not provide significant guidance as to what 'circumstances' might be considered 'special'"). Accordingly, *"[t]he list of potential 'special circumstances' is not limited to those previously recognized in published decisions,"* and "the determination of *what constitutes a 'special circumstance,' is left to the sound discretion of the trial judge*." *In re Extradition of Gonzalez*, 52 F.Supp.2d 725, 736 (W.D. La. 1999) (citing *Beaulieu v. Hartigan*, 554 F.2d 1, 1 (1st Cir. 1977)).

*Santos*, 473 F. Supp. 2d at 1036 (emphases added).

Thus, this Court should—as Judge Reinhardt once sagely admonished—deem factual "circumstances" (however novel) as being "special" whenever it finds that such circumstances are warranted by the record evidence, the case law, and the merits. *See, e.g., Parretti v. United States*, 143 F.3d 508, 512 (9th Cir. 1998) (Reinhardt, J., dissenting) ("As to the bail issue, the government relies on cryptic language in an ambiguous case written by the Supreme Court almost 100 years ago for its argument that an almost irrebuttable presumption against bail exists in extradition cases. *See Wright v. Henkel*, 190 U.S. 40 (1903). . . . [W]e [thus] leave this circuit's law on the bail issue . . . in total disarray. *See, e.g., In re Kirby*, 106 F.3d 855 (9th Cir.1996)

(finding special circumstances existed for the remarkable reason that the potential

extraditees, IRA terrorists, 'enjoy the sympathy and are objects of concern of many

Americans'")).[7]

**C.    As Emphasized by German Attorney Krauss's Declaration and the
Release Orders Issued for Mr. Mizrachi's Substantively-Identical
Co-Defendants, "Special Circumstances" Exist Here.**

1.    *The availability of bail for Mr. Mizrachi in Germany (should
he be eventually extradited there) is a "special circumstance"
favoring release—as stated in Magistrate Judge Kim's
order releasing the similarly situated Katiuska Cruz*

Mr. Mizrachi's case—which involves circumstances that are identical to those

discussed by the Magistrate Judge Kim in *United States v. Katiuska Cruz*, 2:25-mj-

6750 (SK)—also presents a scenario where 1) bail in Germany is available to Mr.

Mizrachi, and 2) pre-extradition release is thus warranted. Thus, Judge Kim ruled:

> The overriding special circumstance supporting [Ms. Cruz's] release is
> the availability—not guarantee—of bail under German law for the
> offenses charged. Expert German-law analysis submitted by [Cruz's]
> counsel indicates that the functional equivalent of bail is generally
> available in Germany, and that [Cruz] would have the chance to seek
> bail based on many of the same factors supporting a special-
> circumstances release here . . . .

Ex. G (ECF No. 34) at 1, ¶3; *see also United States v. Kollmar*, 2019 WL 2163005

(E.D.N.Y., Aug. 31, 2022) at *4 ("[T]he fact that Canada would grant bail to

---

[7]    The Magistrate Judge's wholesale dismissal of the *Parretti* line of cases (in which the
Magistrate Judge noted, *see* Ex. at 48, that one of its opinions had "withdrawn," but ignored that
those portions of the opinions pertaining to bail appeared unaffected) has, in any event, nothing to
do with Judge Reinhardt's cogent remarks.

defendants facing extradition for similar offenses is a special circumstance . . . .") (discussing *United States v. Taitz*, 130 F.R.D. 442, 447 (S.D. Cal. 1990)).

As shown in the well-researched, carefully reasoned analysis supplied by Daniel-Marcus Krause, LL.M., a partner in the law firm of Krause & Kollegen in Berlin (attached as Exhibit C, § IV), pre-trial bail in Germany will be available to Mr. Mizrachi while he is forced to wait—for what Dr. Krause estimates will surely amount to a lengthy period of time—until his pretrial proceedings (including voluminous discovery review) and his trial itself are completed. *See*, *e.g.*, Ex. C at 11 (because pretrial detention is deemed by Germany to be "an encroachment on personal freedom [that] is only justified 'if and to the extent that the legitimate claim of the state community to a complete investigation of the crime and swift punishment of the perpetrator cannot be secured other than by the provisional detention of a suspect,' . . . the provision of bail is of particular importance") (citing, *inter alia*, Federal Constitutional Court, BVerfGE 20, 144 (147) . . . as well as NJW 2001, 1341 and StV 1996, 156)).

Because Dr. Krause understandably opines that Mr. Mizrachi *would* qualify for bail in Germany, this "special circumstance," recognized by Magistrate Kim in *Cruz*, applies with the same force here. *See* Ex. C at 12 ("[R]elease from custody on bail is an integral part of the law on pre-trial/investigative detention . . . . It is practiced daily in Germany . . . . Therefore, according to German law and the practice of the courts in Germany, the release of Mr. Mizrachi on bail would be legally and factually

possible."). The availability of bail in Germany is thus a "special circumstance" supporting Mr. Mizrachi's immediate release pending extradition.[8]

> 2.  *Germany's refusal to extradite its own citizens to the United States creates an lack of reciprocity under the treaty, thus creating another "special circumstance"*

Treaty-based extradition obligations depend on reciprocity: unless *both* signatory countries obey the terms of their treaties and duly extradite its own citizens to a co-signatory's country upon request, the compliant country's duty to do so evaporates. *See, e.g., Trinidad*, 683 F.3d at 1000 ("[J]ust as the United States has agreed to extradite those who have committed crimes in certain countries, we depend on those countries to extradite individuals who have committed crimes here. If we fail to fulfill our extradition obligations, it is likely that when we request extradition, other countries will fail to fulfill their obligations.") (Berzon, J., concurring); *see also*

---

[8]   While just a fraction of the voluminous discovery has been produced, even that small quantum casts grave doubt—recognized even by the U.S. Department of Justice—as to Germany's ability to tie Mr. Mizrachi to the German charges. Thus, Dr. Krause states that

> [after] [German] Public Prosecutor Schüler submitted a draft affidavit to the U.S. authorities for the extradition request, . . . [i]n May 2025, the representative of the U.S. Department of Justice, . . . Ms. Andrea Tisi Austin, pointed out on several occasions that *Mr. Mizrachi's involvement was not sufficiently evident from the nearly 50-page description*. [DOJ's] Ms. Austin expressly pointed out that . . . it *was* necessary [for the German prosecutor] to *describe in detail what actions Mr. Mizrachi was [specifically] alleged to have taken* . . . . Neither had this been presented . . ., nor had *any* evidence been submitted or referred to in this regard. In addition, *a number of conclusions and assertions were criticized as being incomprehensible based on the underlying facts*.

Ex. C at 14-15 (emphases added).

*Martinez v. United States*, 793 F.3d 533, 563 (6th Cir. 2015) (Sutton, J., concurring

and dissenting), *vacated on other grounds* (Oct. 14, 2015), *and en banc*, 828 F.3d 451

(6th Cir. 2016) ("*Factor* requires courts to "interpret extradition treaties to *produce*

*reciprocity between . . . the signatories*.") (emphases added) (quoting *In re Extradition*

*of Howard*, 996 F.2d 1320, 1330-31 (1st Cir.1993)); citing *Factor v. Laubenheimer*,

290 U.S. 276, 293-94 (1933)).

These principles of international reciprocity—and the treaty-based duties that

flow from them—apply to (but are being trampled in) this case. The Magistrate Judge

seemed to sense this manifest violation, but wrongly refused to remedy it. *See, e.g.,*

Ex. A at 43 (Magistrate correctly states: "[W]e are doing our part to . . . extradite our

U.S. citizens to answer to the violation of a German law, but the Germans aren't

extraditing their citizens to answer to violation of our law."); *see id*. at 46-47

(prosecutor, who reasonably emphasized the importance of bilateral treaty obligations,

candidly stated: "[W]hile the German/U.S. extradition treaty requires *both* parties to

do this, . . . the German constitution . . . prevents Germany, under their domestic laws,

from sending somebody back [to the United States] . . . . I'm not going to contest that.")

(emphases added).

The Magistrate Judge's initial statement and the prosecutor's concession were

1) correct, and 2) in accordance with German law, which, at the German Constitutional

level, takes a "second tier" view of United States courts. *See* Ex. C, § III at 5-7. In

particular, while Germany adheres to its extradition obligations pertaining to

international courts and to countries within the European Union, countries falling within neither of those euro-centric categories will face roadblocks, if not complete refusals. *See, e.g.*, *id*. at 6 (Dr. Krause opines: "[U]nlike in relation to EU member states and international courts, the Federal Republic of Germany *does not currently have adequate confidence in the sufficiency of the rule of law in criminal proceedings pursued in the United States of America* and other countries outside the EU to extradite German citizens to the United States of America . . . .") (emphases added).

Given Dr. Krause's pronouncement (and, despite the possibility of other, unhelpful options, such as United States authorities trying an American citizen in this country (but under German criminal law) in lieu of extradition, *see* Ex. C at 7), a clear lack of reciprocity exists in this case, on this treaty. The bottom line—as the Magistrate Judge wrongly ignored—is that only one side (the United States) is complying with its extradition obligations. This clear imbalance should thus be considered as a "special consideration" in Mr. Mizrachi's case. *But see* Ex. A at 52 (Magistrate Judge wrongly states that lack of reciprocity is, for some unexplained reason, "not determinative.").[9]

/ / /

---

[9]     Mr. Mizrachi reasserts arguments presented to the Magistrate Judge. *See* ECF No. 26 at 10 (five-year limitations), 11 n.8 (German prosecutor may exercise discretion to decline prosecution), 11-14 (terms of extradition treaty, Fourth Amendment, and *In the Matter of Extradition of Lehming*, 951 F. Supp. 505 (D. Del. 1996) weaken any prosecution in Germany); *see also id*. at 14-15 (such arguments can be considered as "special circumstances").

3. *Mr. Mizrachi's detention is—in light of his three similarly situated codefendants' releases—unfair and disparate, thus justifying classification as a "special circumstance"*

In addition to Mr. Mizrachi, three other United States citizens were recently arrested pending extradition to Germany to face the same charges. *See United States v. Ardeshir Akhavan*, 2:25-mj-6749 (ECF No. 8, Nov. 4, 2025) (attached as Exhibit E) (Release Order); *United States v. Tunde Benak*, 2:25-mj-6757 (ECF No. 12, Nov. 7, 2025) (attached as Exhibit F) (Release Order); *United States v. Katiuska Cruz*, 2:25-mj-6750 (attached as Exhibit G).[10]

But unlike Mr. Mizrachi, those three Americans were ordered released pending extradition. Moreover, the circumstances attending their three bail applications are functionally indistinguishable from Mr. Mizrachi's: each 1) posted or offered to post a significant bond, 2) was released pursuant to a host of restrictions, including home detention, and 3) could not, apart from paying attorney's fees, "sell, transfer, or give away an asset valued at $20,000," except attorney's fees here and in Germany, without prior Court approval. *Compare* Ex. E at 1-5 (Akhavan release order states: "Bail fixed at $2,000,000;" must "surrender all passports and travel documents . . . no later than 24 hours after release;" must submit to "home detention" as well as "location monitoring with ankle monitor;" and "All digital devices will be subject to monitoring

---

[10]    Exhibit G comprises ECF No. 32 ("Stipulation Regarding Conditions of Bond" and Conditions of Release, dated Nov. 12, 2025), and ECF No. 34 ("Civil Minutes—General: Order Conditionally Granting Bail Pending Extradition Proceedings, dated Nov. 15, 2025).

. . . ”), Ex. F at 1-5 (same conditions for Benak, who posted a $1.5 million bond and who, unlike her "common law husband" Akhavan, suffers from no adverse medical conditions whatsoever); Ex. G at 1-5 (same release conditions for Katiuska Cruz, who posted a $1.2 million bond and whose release was secured by a joint "Stipulation Regarding Conditions of Bond" with the government), *with* ECF No. 26 (Nov. 24, 2025) (Mr. Mizrachi, in written submission to Magistrate Judge, volunteered to post a $1.5 million bond and to submit to any additional restrictions, including those imposed on Akhavan, Benak, and Cruz).

All four co-defendants should thus be released—there is simply no principled basis upon which the other three can be distinguished from Mr. Mizrachi. *See, e.g.*, *United States v. Bryant*, 827 F. App'x 22, 124–25 (2d Cir. 2020) ("[I]n some circumstances [where, as here, even the BRA imposes presumption of detention on both co-defendants], district courts must consider the treatment of other similarly-situated or 'comparator' defendants in order to avoid arbitrary or unlawful distinctions in the bail system . . . . We therefore acknowledge the force of Bryant's argument that if a set of bail conditions were sufficient to rebut the presumption against release in a similarly-situated co-defendant's case, *it should have been sufficient in his own*.") (emphases added) (citing *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019)).

Thus, in releasing the perfectly healthy Tunde Benak to care for Akhavan (who was also released), Magistrate Judge Kim did not suggest (as was suggested to Mr. Mizrachi) that Ms. Benak should have to "pay for caretakers or drivers" to take care of

the sick person in *her* charge. Ex. A at 49. Here, however, the Magistrate Judge's

"reasoning" on the issue of disparity boils down, again, to a single remark: "The fact

that [Mizrachi's] co-conspirators have been released on bail . . . is not a factor that

influences this court's decision." *Id*. at 52.

   This reductive approach cannot withstand scrutiny. *See, e.g., Santos*, 473 F.

Supp. 2d at 1036 (noting that "[t]he term 'special circumstances' . . . has never been

precisely defined," and that courts must address this issue "on a case by case basis [to

determine whether] particularly sufficient circumstances" do warrant release) (quoting

*In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996)). If the healthy,

medically untrained Tunde Benak can rebut the presumption of detention pending

extradition to provide comfort to her "common law husband," then Mr. Mizrachi

should also be released, not only to take care of his own medical conditions (which,

while not terminal, are more serious than Ms. Benke's), but *also* to take care of his

children and his parents.

   Moreover, Pretrial Services specifically recommended that Mr. Mizrachi be

released—a critical point that the Magistrate only grudgingly conceded. *See* Ex. A at

53 ("We did receive an updated pretrial services report that finds . . . . [W]ell, all I have

is a recommendation of release, but I don't have the reasoning for it. So, I don't know

what to do with this . . . . [T]here is a recommendation of release, but unsupported.").

The unfair, unexplained disparity between the jailed Mr. Mizrachi and his three

released co-extraditees should, therefore, be recognized here as a "special

circumstance" warranting his release. *Cf. United States v. Mendoza-Morales*, 347 F.3d 772, 777 (9th Cir. 2003) (rejecting, in sentencing context, any approach that would be "inconsistent with the primary purpose . . . [to avoid] *unwarranted . . . disparities among defendants with similar records*") (emphases added) (discussing *United States v. Martinez*, 905 F.2d 251, 253 (9th Cir. 1990)).

4. *Germany's delays in requesting extradition and in producing the voluminous contents of the investigation file to Mr. Mizrachi are "special circumstances" warranting release*

Two types of delay also qualify as "special circumstances." First, with regard to the delay engendered by the German prosecutor in commencing this case against Mr. Mizrachi, *years* have elapsed between the start of this investigation (still ongoing), and the request in 2025 for Mr. Mizrachi's extradition. *See*, *e.g.*, Ex. C at 4 ("[A]rrest warrants have been executed against 18 individuals. There is no indication as to when the investigation will be concluded. Based on my professional experience with similarly complex proceedings, I know that these proceedings typically take several years before the investigation is concluded. If charges are brought, this is followed by a main trial, which also lasts several years . . . . A notable example in this context [is a case] that . . . lasted six years at the stage of the preliminary investigation and more than four years in the subsequent main trial.").

Mr. Mizrachi insists that—however "complex" this case is claimed to be— eternal delays are not tolerated and the United States prosecutor—perhaps in conjunction with his German counterpart—should be forced to explain exactly *why* it

has taken the better part of a decade to get around to requesting the extradition of Mr. Mizrachi—who has been openly living here for that entire time. *See supra* at note 9 (DOJ questions German prosecutor about which evidence actually establishes *Mr. Mizrachi's* connection to German charges); *see also Wroclawski*, 634 F. Supp. 2d at 1008 (11-year delay is "lengthy" and "unexplained" and receives "consideration as a special circumstance"); *United States v. Kollmar*, 2019 WL 2163005 (E.D.N.Y., Aug. 31, 2022) ("the delay in prosecution of this case is a special circumstance . . . .") (relying on *Castaneda-Castillo* and *Chapman*).

Finally, the sheer volume of the *total* discovery expected to be produced in this case, at some point, will take several *months* to review effectively. *See* Ex. C at 2-3 (Dr. Krause explains: "The case file has not yet been made available in its entirety. The prosecutor in [Germany] . . . has informed us that the . . . file must be provided in several stages due to the volume of data. We already have more than 200 gigabytes . . . . Based on my professional experience, I assume that the file currently comprises several hundred thousand pages. It took [Dr. Krause and his team] six hours just to review the [M-LAT file] . . . concerning Mr. Mizrachi . . . . . This is only a very small part of the entire file material. Based on my professional experience in comparable cases, the evaluation of the entire investigation file necessary for an effective defense will take several months.").

Thus, just as a voluminous discovery production warrants the remedy of a trial continuance based on the "ends of justice," *compare United States v. Lewis*, 611 F.3d

1172, 1176 (9th Cir. 2010), the remedy of release pending extradition should be afforded to Mr. Mizrachi here—to avoid him having to wait in custody for months while his counsel tries to obtain, and then review, an enormous file containing unproven foreign charges.

> **D.    This Court Should Further Find that—Despite the Magistrate Judge's Wrongful Refusal to Address the Issue—Release Conditions Can Be Fashioned to Negate Mr. Mizrachi's Alleged Flight Risk.**

As shown, after wrongly ruling there were no special circumstances in this case, the Magistrate Judge refused to consider Mr. Mizrachi's arguments regarding appropriate release conditions. By dismissing the relevance that such conditions might have at *any* stage of an extradition inquiry, the Magistrate erred a second time.

> While lack of flight risk is not *"the* criteria for release in an extradition case," *Salerno,* 878 F.2d at 318 (emphasis added), several courts have found it to be *an important factor in granting bail*. *See United States v. Messina,* 566 F. Supp. 740, 743 (E.D.N.Y.1983) (recognizing that being "good bail risks" might qualify as a special circumstance); *Beaulieu v. Hartigan,* 430 F. Supp. 915, 917 . . . ("one of the basic questions . . . is whether, *under all circumstances,* the petitioner is likely to return to court . . . .").

*Chapman*, 459 F. Supp. 2d at 1027 (first emphasis in original).

In any event, the remaining hurdles for release—flight risk and danger—are easily cleared, particularly since the government does not assert "danger" as a basis for detention. *See, e.g., Antonowicz*, 244 F. Supp. 3d at 1067–68 ("Once special circumstances are shown, [the fugitive] must also demonstrate that he or she will not flee or pose a danger to any other person or to the community.") (quoting *Kim*, 2004

WL 5782517 (C.D. Cal., July 1, 2004)); *see also* ECF No. 26 at 17-18 (arguing that attempts to show flight risk are speculative, groundless, and easily mitigated by conditions of release—to which Mr. Mizrachi willingly submits).

Conditions can, therefore, be fashioned for release—just as they were for Akhavan, Benak, and Cruz, and just as Pretrial Services recommended for Mr. Mizrachi himself. Thus, while the fashioning of those conditions fall within this Court's discretion, Mr. Mizrachi states his willingness to: 1) surrender any passports; 2) comply with "house arrest," with only reasonable exceptions upon permission from this Court or the Pretrial Services Office; 3) post a bond in the amount of $1.5 million, to be secured by his the two houses he owns;[11] 4) submit to any reasonable monitoring; and 5) abide by any computer or internet restrictions. The idea that Mr. Mizrachi would ignore these and other conditions and avoid his duty to provide comfort and care *as* a parent (to his motherless children) and *to* his own parents, is thus untenable.

/ / /

---

[11] As shown by attached Exhibits K and L, the combined equity in both homes sufficiently secures a bond for $1.5 million—which is in line with the bonds posted by Akhavan, Benak, and Cruz. Additionally, Exhibits M and N, are title reports showing that the only debt associated with the homes is that which is reflected in the mortgage statements. In accordance with L.Cr.R. 49.1-1, these contain redactions to ensure compliance with privacy requirements. Counsel will provide unredacted copies to the Court at the time of the hearing.

## V.    CONCLUSION

As set forth above and to be shown at the hearing, Mr. Mizrachi respectfully requests that this Court enter an Order that he be released pending extradition, on any conditions this Court deems just and reasonable.

DATED this 8th day of January, 2026.

Respectfully Submitted:                          Respectfully Submitted:

/s/  David Z. Chesnoff                            /s/  Chad D. Nardiello
DAVID Z. CHESNOFF, ESQ.               CHAD D. NARDIELLO, ESQ.
*Pro Hac Vice*                                        California Bar No. 224837
RICHARD A. SCHONFELD, ESQ.      NARDIELLO TURANCHIK TOMPKINS LLP
California Bar No. 202182                     1801 Century Park East, Suite 1050
520 South Fourth Street                        Century City, CA 90067
Las Vegas, Nevada 89101                      Telephone: (310) 201-0123
Telephone: (702) 384-5563                    Attorney for GUY MIZRACHI
Attorneys for GUY MIZRACHI

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of January, 2026, I caused the forgoing

document to be filed electronically with the Clerk of the Court through the CM/ECF

system for filing; and served on counsel of record via the Court's CM/ECF system.


/s/  Camie Linnell
Employee of Chesnoff & Schonfeld

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.2, the undersigned counsel of record for Guy Mizrachi certifies that this brief does not exceed 25 pages, which complies with the page limit under Local Rule 11-6.1.

DATED this 8th day of January, 2026.

Respectfully Submitted:                           Respectfully Submitted:

/s/  David Z. Chesnoff                            /s/  Chad D. Nardiello
DAVID Z. CHESNOFF, ESQ.                           CHAD D. NARDIELLO, ESQ.
*Pro Hac Vice*                                    California Bar No. 224837
RICHARD A. SCHONFELD, ESQ.                        NARDIELLO TURANCHIK TOMPKINS LLP
California Bar No. 202182                          1801 Century Park East, Suite 1050
520 South Fourth Street                           Century City, CA 90067
Las Vegas, Nevada 89101                           Telephone: (310) 201-0123
Telephone: (702) 384-5563                          Attorney for GUY MIZRACHI
Attorneys for GUY MIZRACHI